**EFiled: Apr 24 2019 08:00AM EDT**
**Transaction ID 63186036**
**Case No. 2019-0026-JTL**

## IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| TIMOTHY LI, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 2019-0026-JTL |
| | ) | |
| LOANDEPOT.COM, LLC, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION

Date Submitted: April 17, 2019
Date Decided: April 24, 2019

Brett M. McCartney, Elizabeth A. Powers, BAYARD, P.A., Wilmington, Delaware; Shawn M. Kennedy, MODERA LEGAL, Irvine, California; *Counsel for the Plaintiff.*

Eric Lopez Schnabel, Alessandra Glorioso, DORSEY & WHITNEY LLP, Wilmington, Delaware; John Baker; Bryan M. McGarry; DORSEY & WHITNEY LLP, Costa Mesa, California; *Counsel for Defendant.*

**LASTER, V.C.**

Timothy Li was an employee of loanDepot.com, LLC (the "Company"). The Company's limited liability company agreement (the "LLC Agreement") granted employees and agents a right to mandatory indemnification to the fullest extent of the law. Compl. Ex. A § 6.4(a). The indemnification right included a right to mandatory advancement for any proceeding for which the indemnitee might ultimately be entitled to indemnification.

The Company sued Li, then commenced an arbitration against him. Both proceedings implicated Li's advancement rights. The Company subsequently dismissed the arbitration against Li without prejudice, triggering the portion of Li's fullest-extent-of-the-law indemnification right that applies when an indemnitee has been successful on the merits or otherwise. *See Meyers v. Quiz-DIA LLC*, 2017 WL 2438328, at *7–8 (Del. Ch. June 6, 2017); *Stockman v. Heartland Indus. P'rs*, 2009 WL 2096213, at *10–11, 17–18 (Del. Ch. Jul. 14, 2009) (Strine, V.C.).

Li sued in this court to enforce his advancement right. The Company moved to dismiss the case, citing a mandatory forum selection clause in the LLC Agreement which called for any disputes relating to the LLC Agreement to be heard "in the state or federal courts located in Los Angeles, California . . . ." Compl. Ex. A § 14.8.

Under Delaware law, "[a] valid forum selection clause must be enforced." *Nat'l Indus. Gp. (Hldg.) v. Carlyle Inv. Mgmt. L.L.C.*, 67 A.3d 373, 381 (Del. 2013). Forum selection clauses are generally valid "unless the resisting party can 'clearly show that enforcement would be unreasonable and unjust, or that the clause was invalid for such

reason as fraud or overreaching.'" *Id.* (quoting *The Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 15 (1972)).

Li does not challenge the forum selection clause on the traditional grounds. Li relies instead on Section 18-109(d) of the Delaware Limited Liability Company Act (the "LLC Act"). With formatting and enumeration added to promote clarity, that section states:

> [1] In a written limited liability company agreement or other writing, a manager or member may consent
>
>> [a] to be subject to
>>
>>> [i] the nonexclusive jurisdiction of the courts of, or arbitration in, a specified jurisdiction, or
>>>
>>> [ii] the exclusive jurisdiction of the courts of the State of Delaware, or
>>>
>>> [iii] the exclusivity of arbitration in a specified jurisdiction or the State of Delaware, and
>>
>> [b] to be served with legal process in the manner prescribed in such limited liability company agreement or other writing.
>
> [2] Except by agreeing to arbitrate any arbitrable matter in a specified jurisdiction or in the State of Delaware, a member who is not a manager may not waive its right to maintain a legal action or proceeding in the courts of the State of Delaware with respect to matters relating to the organization or internal affairs of a limited liability company.

6 *Del. C.* § 18-109(d). Li contends that because he was both a member and an employee, he could not have agreed to a provision that divested him of his ability to maintain a legal action in the courts of the State of Delaware for a dispute relating to the internal affairs of the Company.

The Company says the forum selection clause is binding on Li for purposes of his advancement claim, citing *Merinoff v. Empire Merchants, LLC*, 2017 WL 464525 (Del.

Ch. Feb. 2, 2017). The LLC agreement at issue in that decision contained an exclusive forum clause selecting courts in New York, and this court enforced the provision against two employees seeking advancement. *Id.* at *1. But the parties to that case did not raise Section 18-109(d). They instead argued that the LLC agreement incorporated by reference Section 145(k) of the Delaware General Corporation Law, which vests the Court of Chancery with exclusive jurisdiction over indemnification and advancement disputes. *See id.* at *2; *see also* 8 *Del. C.* § 145(k). The *Merinoff* decision analyzed and rejected this argument; it did not address the implications of Section 18-109(d).

Even so, Li's argument runs counter to precedent and plain meaning. In terms of precedent, the Delaware Supreme Court held in *Elf Atochem North America Inc. v. Jaffari*, 727 A.2d 286 (Del. 1999), that the first sentence of Section 18-109(d) did not impose any limitations on forum selection clauses in LLC agreements. At the time, what is now the first sentence of Section 18-109(d) constituted the entirety of the provision. The Delaware Supreme Court held that the provision was permissive and merely described some of the forum selection provisions that an LLC agreement could contain. *Id.* at 296 (reading the statute as "permissive in that it provides that the parties 'may' agree to the non-exclusive jurisdiction of the courts of a foreign jurisdiction or submit to the exclusive jurisdiction of Delaware"). The high court noted that what is now the first sentence of Section 18-109(d) "does not expressly state that the parties are prohibited from agreeing to the *exclusive* subject matter jurisdiction of the courts or arbitration fora of a foreign jurisdiction." *Id.* The court reasoned that if the General Assembly had "intended to prohibit the parties from

3

vesting exclusive jurisdiction in arbitration or court proceedings in another state, it could have proscribed such an option." *Id.*

After *Elf Atochem*, the drafters of the alternative entity statutes went back to the drawing board and proposed amendments to Section 18-109(d) and the analogous provision of the Delaware Revised Uniform Limited Partnership Act (the "LP Act"). *See Baker v. Impact Hldg., Inc.*, 2010 WL 1931032, at *2 (Del. Ch. May 13, 2010) (describing amendments). The General Assembly adopted the amendments, which added the second sentence.

The second sentence establishes a more modest limitation on forum selection clauses than what the first sentence might have proscribed by implication. Before its definitive interpretation in *Elf Atochem*, the negative pregnant in the first sentence might have suggested that a forum section clause in an LLC agreement could not eliminate Delaware as a forum except by providing for exclusive arbitration. The plain language of the second sentence only extends to non-managing members, and it only preserves the ability of a non-managing member to bring or maintain a suit in Delaware. It does not encompass other types of claimants under an LLC agreement, and it does not mandate that all litigation involving internal governance disputes with non-managing members take place in the Delaware courts. *See In re Bay Hills Emerging P'rs I, L.P.*, 2018 WL 3217650, at *9 (Del. Ch. July 2, 2018). As leading commentators have suggested, a non-managing member could bargain for a provision that specified that the entity had to sue the member in the member's home jurisdiction, while still preserving the member's right to sue in Delaware. *See* Martin I Lubaroff & Paul M. Altman, *Lubaroff & Altman on Delaware*

4

*Limited Partnerships* § 2.3, at 2-11 (2011 Supp.) (explaining that the analogous provision of the LP Act "gives the general partner the flexibility to be able to agree that it will only bring an action against a particular limited partner in the limited partner's home jurisdiction, which many limited partners require").

The second sentence of Section 18-109(d) is thus a narrow provision that only preserves the ability of a non-managing member to sue in Delaware. Li argues that even this limited provision protects his right to bring his advancement claim in Delaware, because he was a member when the conduct giving rise to his advancement right arose. Although the Company repurchased Li's member interests, Dkt. 19 Ex. A § 1, his right to advancement vested while he was a member. *See Marino v. Patriot Rail Co.*, 131 A.3d 325, 343–44 (Del. Ch. 2016) (applying vesting principles under 8 *Del. C.* § 145(e)). Li says his right to sue in Delaware under Section 18-109(d) vested as well.

In this case, Li is not suing in his capacity as a non-managing member. He did not commit any of the alleged wrongdoing that gave rise to the Company's claims in his capacity as a non-managing member, and he is not entitled to advancement or indemnification because he was a non-managing member. He acted as an employee or agent, and he is entitled to advancement or indemnification in those capacities. If Li had never been a member, he would still have the same rights to advancement and

5

indemnification. Because Li is not suing in his capacity as a member, Section 18-109(d) does not apply.[1]

---

[1] In my view, a stronger framing of Li's argument would perceive in Section 18-109(d) a public policy of preserving a Delaware forum for parties with relatively limited involvement in the drafting of the LLC agreement and who might otherwise be deprived of a Delaware forum by those in control of either the drafting or amendment process. By statute, every member of an LLC is a party to the LLC agreement. *See* 6 *Del. C.* § 18-101(7). But some members, such as member-managers, are more closely involved with the entity than other members, such as non-managing members. Section 18-109(d) preserves a Delaware forum for non-managing members. To the extent it does so, the argument would go, the same public policy should preserve a Delaware forum for plaintiffs who have an even more attenuated relationship to the LLC agreement and less influence over the forum selection decision, such as employees and agents. A policy-based argument of this nature would have to contend with the plain language of the second sentence of Section 18-109(d), which only addresses non-managing members. It also would have to address authorities which hold that when a third-party beneficiary or other non-party seeks rights under an agreement, it must accept the agreement as a whole, including any forum selection provision in the agreement. *See, e.g.*, *NAMA Hldgs., LLC v. Related World Mkt. Ctr., LLC*, 922 A.2d 417, 531 (Del. Ch. 2007) (requiring third-party beneficiary to abide by arbitration clause). One possible response to the latter line of cases would recognize that a third-party beneficiary is bound by a forum selection provision to the same extent as a party is bound, and hence if a non-managing member could avoid the clause for purposes of maintaining a lawsuit in Delaware, a third-party beneficiary with a more attenuated relationship to the agreement also should be able to do so.

The issue is not insignificant. In an empirical study of 233 operating agreements for privately held Delaware LLCs, two scholars found that 26% of the agreements contained exclusive forum provisions that restricted judicial resolution of disputes to a particular court or courts. *See* Peter Molk & Verity Winship, *LLCs and the Private Ordering of Dispute Resolution*, 41 J. Corp. Law. 795, 799–800, 802 (2016). While 80% of the provisions vested exclusive jurisdiction in the courts of Delaware, 20% vested exclusive jurisdiction in the courts of other states. *Id.* at 802. These figures excluded provisions for mandatory arbitration, which were found in 17% of the agreements in the sample. *Id.* at 805. But Li has not advanced this broader, policy-based argument, and so this decision does not provide any opportunity for considering it.

Finally, Li argues that the forum selection provision in unenforceable under California law. California has a venue statute for suits involving corporations and other entities which limits venue to the county where (i) the underlying contract was made or performed, (ii) the obligation or liability arose or the breach occurred, or (iii) the corporation has its principal place of business. *See* Cal. Code Civ. Proc. § 395.5. The Company has its principal place of business in Orange County, and Li asserts that all of the relevant conduct occurred in Orange County. He concludes that a provision requiring suit in Los Angeles would contravene the California venue statute..

How a California court applying California law would interpret the forum selection clause for purposes of determining venue does not affect the outcome of this motion. Delaware law controls the outcome for purposes of this decision, and Delaware law requires that the provision be enforced. Whether a California court would permit or require refiling in or a transfer to Orange County or another permissible venue is a question for a future lawsuit.

The forum selection clause requires dismissal. In light of this holding, this decision does not reach any of the other arguments that the parties have raised.